IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

---

CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON,

      Plaintiff,

vs.                                 No. 3:13-cv-180

GERALD CRESS, CRESS COMPANY, INC.,
CRESS DEVELOPMENT, LLC,
DAVID BROWN, and BETTY J. BROWN,

      Defendants.

---

**COMPLAINT FOR DECLARATORY JUDGMENT**

---

Come now Certain Underwriters at Lloyd's, London ("Underwriters"), pursuant to 28 U.S.C. § 2201, *et seq.*, Tenn. Code Ann. § 29-14-101, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, and sue the Defendants, Gerald Cress, Cress Company, Inc., Cress Development, LLC (collectively, the "Cress Defendants"), David Brown, and Betty J. Brown (collectively, the "Brown"), for declaratory judgment, and for cause of action aver as follows:

1.      Underwriters is a syndicate of insurers with its principal place of business in London, England.

2.      Upon information and belief, Gerald Cress is a resident citizen of Knox County, Tennessee, who resides at 1911 Shady Hollow Lane, Knoxville, Tennessee, 37922, where he may be served with process.

3.      Upon information and belief, Cress Company, Inc. is a Tennessee corporation with its principal place of business located in Knox County, Tennessee at 1911 Shady Hollow

Lane, Knoxville, Tennessee 37922. It may be served with process through its registered agent, Gerald Cress, 1911 Shady Hollow Lane, Knoxville, Tennessee 37922.

4. Upon information and belief, Cress Development, LLC is an inactive Tennessee limited liability company with its principal place of business located in Knox County, Tennessee at 1911 Shady Hollow Lane, Knoxville, Tennessee 37922. It may be served with process through its registered agent, Gerald Cress, 1911 Shady Hollow Lane, Knoxville, Tennessee 37922.

5. Upon information and belief, the Browns are resident citizens of Porter County, Indiana, who reside at 6133 Sunrise Avenue, Portage, Indiana 46368, where they may be served with process.

6. Subject matter jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as there is complete diversity of citizenship between the Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendants herein, because the Cress Defendants reside in or have their principal place of business in the State of Tennessee, the Browns own the real property at issue which is located in the State of Tennessee, and the underlying lawsuit at issue between the Browns and the Cress Defendants is pending in the State of Tennessee.

8. Venue is proper herein pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 123(a)(1).

9. Effective November 9, 2011 and expiring November 9, 2012, Underwriters issued policy number AMT002438 (the "Policy"). Cress Company, Inc. is the named insured on the

Policy.  Underwriters rely upon and incorporate herein by reference as if fully set forth all of the terms and conditions of the Policy, a true and correct copy of which is attached hereto as Exhibit A.

10.     Upon information and belief, on or about October 21, 2010, Cress Company, Inc. and Betty J. Brown entered into a written design fee agreement for the design of a new house to be built at 445 Water View Drive, Rockwood, Tennessee 37854 (the "House").   Upon information and belief, on or about May 20, 2011, Cress Company, Inc. and the Browns entered into a written contract for the construction of the House.

11.     On or about November 13, 2012, the Browns initiated a lawsuit by filing a Complaint against the Cress Defendants in the Circuit Court of Tennessee for the Ninth Judicial District at Rockwood with docket number 12-CV-205 (the "Lawsuit").  A true and correct copy of the Complaint filed in the Lawsuit is attached hereto as Exhibit B and incorporated herein by reference as if fully set forth.

12.     In the Lawsuit, the Browns seek to recover damages that they allegedly sustained as a result of the Cress Defendants' design and construction of the House.  The Browns allege that the Cress Defendants and/or their subcontractors have refused to abide by the terms of the contract, have failed to complete the work described in the contract, have failed to adhere to the architectural designs for the House, have engaged in poor workmanship, and have utilized poor quality materials, all of which has rendered the House completely unfit for use as a residence, structurally unsound, and valueless for resale.

13.     With regard to the Cress Defendants' alleged failure to adhere to the architectural designs, the Browns allege that the Cress Defendants failed to install a proper stairwell inside the House; failed to install stairs off the back deck; installed twelve foot walls in the basement rather

than nine foot walls; and installed a "safe room" in the basement that was not in the architectural plans. The Browns allege that, on multiple occasions, the Cress Defendants failed to follow the wishes of the Browns with regard to how certain items were to be installed, including not installing heated floors in the master bathroom as the Browns had requested and not constructing the covered back deck with solid walls below and screens above as the Browns had requested.

14.     With regard to the allegedly poor workmanship of the Cress Defendants and their subcontractors, the Browns allege that the Cress Defendants and their subcontractors failed to properly grade and fill the project site and allow it to settle prior to beginning construction; failed to build a proper support structure behind the House site to protect the ground below the House from erosion; began construction without allowing the poured footings and concrete pad which support the House to properly cure; failed to properly install deck flashings to prevent extensive leaking; failed to install a safe and reliable stairwell; failed to install appropriate railings and railing spindles on the front porch, side entrance, and back deck; failed to properly install the in-wall plumbing; failed to properly install walls and wall sheetrock in such a way as to avoid significant bowing; failed to install and/or properly install drains to prevent ground erosion and water runoff from flowing into the House; installed the electrical panel and wiring on the exterior of the House; and failed to ensure that the ground in the area where the driveway was to be built was sufficiently sound to support the driveway.

15.     With regard to the alleged use of poor quality materials by the Cress Defendants and their subcontractors, the Browns allege that the Cress Defendants and their subcontractors utilized poor quality structural boards in framing the House; utilized shims to support the concrete pad that constitutes the House's front porch after it became apparent that existing supports were insufficient; improperly installed pocket doors in such a way that they were nearly

two inches too short; utilized boards in framing the deck which have warped and pulled away from the House; and utilized fill dirt in locations where topsoil was supposed to be utilized.

16.     The Browns allege that the damages that they have sustained include, but are not limited to, having an unfinished and structurally unsound House that is valueless for resale; having a piece of property that cannot be utilized for the building of a structurally sound house due to the existence of the structurally unsound House built by the Cress Defendants; incurring attorney's fees and expenses; suffering emotional pain and anguish as a result of the Cress Defendants' conduct and as a result of having their lives upended for an inordinate amount of time; and any other types of damages that the jury may decide to award them.

17.     The Browns allege various causes of action against the Cress Defendants, including breach of contract, negligence, fraud, misrepresentation, outrageous conduct, theft, negligent infliction of emotional distress, breach of express and implied warranties, and violations of the Tennessee Consumer Protection Act. The Browns seek to recover compensatory damages in an amount not to exceed $2,000,000.00, treble damages pursuant to the Tennessee Consumer Protection Act, punitive damages in an amount not to exceed $5,000,000.00, pre-judgment interest, and post-judgment interest.

18.     On or about December 17, 2012, Cress Company, Inc. and Cress Development, LLC submitted a General Liability Notice of Occurrence/Claim to Underwriters for the claims made by the Browns against the Cress Defendants in the Lawsuit. Underwriters are providing the Cress Defendants with a defense in the Lawsuit under an express reservation of all rights.

19.     This action concerns an actual controversy between the parties over whether Underwriters have a duty to defend and indemnify the Cress Defendants in the Lawsuit pursuant

to the Policy.  Underwriters seek a declaratory judgment concerning their rights and obligations under the Policy.

20.     The Policy includes Commercial General Liability Coverage which provides, in pertinent part, as follows:

### 1.     Insuring Agreement

**a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the

"bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

\*  \*  \*

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

21. The Commercial General Liability Coverage contains the following exclusions:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the

7

insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; …

         *                  *                  *

**j.** **Damage to Property**

"Property damage" to:

         *                  *                  *

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

         *                  *                  *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k.** **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.** **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on

your behalf by a subcontractor.

**m.**      **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n.**      **Recall Of Products, Work Or Impaired Property**
Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)**      "Your product";

**(2)**      "Your work"; or

**(3)**      "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

22.      With regard to who is an insured, the Commercial General Liability Coverage provides, in pertinent part, as follows:

**SECTION II – WHO IS AN INSURED**

**1.**      If you are designated in the Declarations as:

9

> **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

23.    With regard to limits of insurance, the Commercial General Liability Coverage provides as follows:

## SECTION III – LIMITS OF INSURANCE

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

> **a.** Insureds;
>
> **b.** Claims made or "suits" brought; or
>
> **c.** Persons or organizations making claims or bringing "suits".

**2.** The General Aggregate Limit is the most we will pay for the sum of:

> **a.** Medical expenses under Coverage C;
>
> **b.** Damages under Coverage A, except damages because of "bodily injury"or "property damage" included in the "products-completed operations hazard"; and
>
> **c.** Damages under Coverage B.

**3.** The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

**4.** Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

**5.** Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    **a.** Damages under Coverage A; and

    **b.** Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

           \*           \*           \*

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

24. With regard to notice, the Commercial General Liability Coverage provides as follows:

**2. Duties In The Event Of Occurrence, Offense, Claim or Suit**

    **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        **(1)** How, when and where the "occurrence" or offense took place;

        **(2)** The names and addresses of any injured persons and witnesses; and

        **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.** If a claim is made or "suit" is brought against any insured, you must:

        **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

25. With regard to other insurance, the Commercial General Liability Coverage provides as follows:

**4.** **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a.** **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

**b.** **Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

    **(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    **(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    **(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    **(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.      Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.   Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.   Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

26.      The Commercial General Liability Coverage contains the following pertinent definitions:

**8.**      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.**      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

**a.**      The repair, replacement, adjustment or removal of

"your product" or "your work"; or

**b.** Your fulfilling the terms of the contract or agreement.

\*　　　　　\*　　　　　\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*　　　　　\*　　　　　\*

**16.** "Products-completed operations hazard":

**a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

**(1)** Products that are still in your physical possession; or

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

**(a)** When all of the work called for in your contract has been completed.

**(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

**(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

                \*                \*                \*

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. …

                \*                \*                \*

**21.** "Your product":

**a.** Means:

    **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

        **(a)** You;

        **(b)**    Others trading under your name; or

        **(c)**    A person or organization whose business or assets you have acquired; and

    **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

**c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

**a.**    Means:

    **(1)**    Work or operations performed by you or on your behalf; and

    **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

**b.**    Includes:

    **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**    The providing of or failure to provide warnings or instructions.

27.    The Commercial General Liability Coverage contains endorsements which

provide as follows:

## TOTAL "MOLD" EXCLUSION

Notwithstanding anything to the contrary contained in the Policy:

This insurance does not apply to "bodily injury", "property damage", "personal injury", "advertising injury", "medical payments" arising out of, resulting from, caused by, contributed to, or in any way related to any "mold".

This exclusion applies to all "bodily injury", "property damage", and "medical payments" included in the "products-completed operations hazard". This exclusion also applies to all "bodily injury", "property damage" and "medical payments" which is not included in the "products-completed operations hazard".

This exclusion also applies to any loss, cost or expense arising out of or associated, in any way, with any:

1)      request, demand, or order that any insured or others abate, mitigate, test for, monitor, remediate, clean up, remove, contain, treat, detoxify, kill, destroy, dispose of, investigate or neutralize, or in any way respond to or assess the presence or effects of "mold"; or

2)      claim or suit on behalf of any person, entity, or organization, including any governmental authority, for damages because of abating, mitigating, testing for, monitoring, remediating, clean up, removing, containing, treating, detoxifying, killing, destroying, disposing of, investigating, or neutralizing, or in any way responding to, or assessing, the effects of "mold"; or

3)      any obligation to share with, repay, or indemnify any person, organization or entity, related in any way to items 1) and 2) above.

We will not defend any claim or suit, or pay any damages, loss, expense, cost, or obligation caused directly or indirectly by, arising out of, resulting from, contributed to by, or related in any way to "mold".

The following definition is added to the Policy:

"Mold" means any species of fungi, including, but not limited to, mold, yeast, mildew, spores, mold toxins, mycotoxins, mold metabolites, mold antigens, mold allergens, mold-produced antibiotics, or dust or fumes containing any of the foregoing, individually, or in any combination therewith or with another substance.

*           *           *

**EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGE**

The following exclusion is added to COVERAGES A, B, AND C (Section 1):

This insurance does not apply to a claim of or indemnification for punitive or exemplary damages. If a suit shall have been brought against you for a claim within the coverage provided under the policy, seeking both compensatory and punitive or exemplary damages, then we will afford a defense for such action. We shall not have an obligation to pay for any costs, interest, or damages attributable to punitive or exemplary damages.

*            *            *

**EXCLUSION – INDEPENDENT CONTRACTORS**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is agreed that this insurance does not apply to "bodily injury" or "property damage" arising out of:

    a)    the acts or omission of independent contractors while working on behalf of any insured, or

    b)    the negligent:

        (i)    hiring or contracting:

        (ii)    investigation:

        (iii)    supervision:

        (iv)    training:

        (v)    retention:

of any independent contractor for whom any insured is or ever was legally responsible and whose acts of omissions would be excluded by (a) above.

The term "Independent Contractors" includes Subcontractors.

*            *            *

**SPECIAL CONDITIONS – INDEPENDENT CONTRACTORS**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

It is agreed that endorsement ART 1503 "EXCLUSION – INDEPENDENT CONTRACTORS" does not apply as respects any independent contractor who has provided, prior to entering any job site on behalf of any Insured, a Certificate of Insurance providing evidence of the following:

a)      Commercial General Liability coverage of limits equal to the lesser limits shown below or limits provided by this policy:

    Commercial General Liability    - $300,000 Each Occurrence
                                     - $300,000 General Aggregate

    Products/Completed Operations  - $300,000 Each Occurrence
                                     - $300,000 General Aggregate

b)      Workers Compensation as required by the state in which the job or jobs are located.

                    *                    *                    *

**ORAL CONTRACTS EXCLUSION**

The Definition of "insured contract" is amended solely to apply to such contracts or agreements which existed in writing prior to an occurrence; in no event will this insurance apply to any allegation of liability assumed by the insured under an oral contract.

                    *                    *                    *

**EXCLUSION – Earth Movement**

**This endorsement modifies insurance provided under the following:**

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" nor do we have any duty to

defend any claim, suit, action, demand, arbitration or alternative dispute resolution arising from, attributable or contributed to or aggravated by the movement of land whether caused by or resulting from natural forces or contributed to, in any way, by any work or operations performed by you or any contractor or subcontractor.

"Movement of land" includes but is not limited to any movement of earth or land, whether at the surface or below the surface and includes any movement of earth to a higher or lower level, landslide, mud flow, mud slide, shearing, rising, settling, shifting or shrinking.

\*                    \*                    \*

## EXCLUSION – PRIOR COMPLETED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

1.  The following exclusion is added to paragraph 2., Exclusions of BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 – Coverages):

    This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard" and arising out of "your work" completed prior to the inception date of the policy.

2.  The "products-completed operations hazard" definition in the DEFINITIONS Section is amended as follows:

    a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising our of "your product" or "your work" except:

    (1)  Products that are still in your physical possession; or

    (2)  Work that has not yet been completed or abandoned.

        "Your work" will be deemed completed at the earliest of the following times:

        (a)  When all of the work called for in your contract has been completed.

        (b)  When all of the work to be done at the job site has

been completed if your contract calls for work at more than one job site.

(c)   When that part of the work done at a job site has been put to its intended use by any person or organization.

Work that may need service, maintenance, correction, repair, or replacement, but which is otherwise complete, will be deemed complete as set forth in paragraph 2.a (2) of this endorsement.

b.   Includes all "bodily injury" and "property damage" occurring during the policy period which (i) occurs away from the premises you own or rent and (ii) arises out of "your product" or "your work" completed by the inception date of this policy.

c.   Does not include "bodily injury" or "property damage" arising out of:

(1)   The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by an insured;

(2)   The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3)   Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

\*                    \*                    \*

**EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I–Coverages) and paragraph 2., Exclusions of COVERAGE B–PERSONAL AND ADVERTISING INJURY LIABILITY (Section I–Coverages):

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of:

1. The preparing, approving or failure to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications by any architect, engineer or surveyor performing services on a project on which you serve as a construction manager, or

2. Inspection, supervision, quality control or engineering services done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

\*            \*            \*

## EXCLUSION – CONTRACTORS – PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to paragraph 2., Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages) and paragraph 2., Exclusions of COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY (Section I – Coverages):

1. This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:

   a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and

   b. Providing, or hiring independent professionals to provide, engineering, architectural or surveying services in connection with construction work you perform.

2. Subject to paragraph 3. below, professional services include:

   a. The preparing, approving, or failing to prepare or approve, maps,

shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and

    b.    Supervisory or inspection activities performed as part of any related architectural or engineering activities.

3.    Professional services do not include services within construction means, methods, techniques, sequences and procedures employed by you in connection with your operations in your capacity as a construction contractor.

28.    The Policy defines "property damage" in pertinent part, as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  In the Lawsuit, the Browns have alleged that the Cress Defendants and/or their subcontractors have refused to abide by the terms of the contract, have failed to complete the work described in the contract, have failed to adhere to the architectural designs for the House, have engaged in poor workmanship, and have utilized poor quality materials.  The only alleged damage that has occurred is to the House itself.  Therefore, there has been no "property damage" within the meaning of the Policy, and Underwriters respectfully request that this Court declare that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit for this reason and also declare that Underwriters have no duty to defend the Cress Defendants against these claims for this reason.

29.    The Policy provides coverage for property damage only if the "'property damage' is caused by an 'occurrence' … ."  The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The

claims asserted by the Browns against the Cress Defendants in the Lawsuit do not constitute an occurrence within the meaning of the Policy, and Underwriters respectfully request that this Court declare that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit for this reason and also declare that Underwriters have no duty to defend the Cress Defendants against these claims for this reason.

30.     There is an exclusion in the Policy which excludes coverage for "'[p]roperty damage' to 'impaired property' or property that has not been physically injured, arising out of [a] defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or [a] delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." The Policy defines impaired property, in pertinent part, as "tangible property, other than 'your product' or 'your work', that cannot be used or is less useful because: [i]t incorporates 'your product' or 'your work' that is known or thought to be defective, deficient, inadequate or dangerous; or [y]ou have failed to fulfill the terms of a contract or agreement; if such property can be restored to use by: [t]he repair, replacement, adjustment or removal of 'your product' or 'your work'; or [y]our fulfilling the terms of the contract or agreement."

31.     In the Lawsuit, the Browns allege that the House cannot be used or is less useful because it incorporates the materials and work of the Cress Defendants and their subcontractors that is alleged to be defective, deficient, and inadequate, and because the Cress Defendants have

failed to fulfill the terms of the contract. The Browns allege that the House could be restored to use by the repair, replacement, adjustment, or removal of the deficient materials and work and by the Cress Defendants fulfilling the terms of the contract. Based on these allegations, the House constitutes impaired property under the terms of the Policy. Therefore, the Policy exclusion for property damage to impaired property arising out of a deficiency or inadequacy in the insured's product or the insured's work, or a failure by the insured to perform a contract in accordance with its terms, applies to exclude coverage for the claims asserted by the Browns against the Cress Defendants in the Lawsuit. Underwriters respectfully request that this Court declare that there is no coverage under the Policy for these claims for this reason and also declare that Underwriters have no duty to defend the Cress Defendants against these claims for this reason.

32. For all of the foregoing reasons, Underwriters respectfully request that this Court declare that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit and also declare that Underwriters have no duty to defend the Cress Defendants against these claims.

33. In addition, there may be no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit, and Underwriters may have no duty to defend the Cress Defendants against these claims, for the following reasons:

1. The Complaint in the Lawsuit demands judgment in an amount in excess of the Policy limits.

2. Gerald Cress and Cress Development, LLC may not be insureds under the Policy.

3.      There was not an "occurrence", as required by the Policy.

4.      There was not an accident, as required by the Policy.

5.      There was no "property damage", as required by the Policy.

6.      There was no "property damage" during the Policy period, as required by the Policy.

7.      Any alleged "property damage" may not have occurred during the Policy period.

8.      Any alleged "property damage" may have begun to occur, in whole or in part, before the inception date of the Policy.

9.      The insured may have known prior to the inception date of the Policy that any alleged "property damage" had occurred or had begun to occur, in whole or in part.

10.     The claim may have arisen before the inception date of the Policy.

11.     Any alleged negligence may not have occurred during the Policy period.

12.     Any alleged "occurrence" may not have occurred during the Policy period.

13.     Any alleged accident may not have occurred during the Policy period.

14.     The insured may not have notified Underwriters of the claim or suit as soon as practicable, as required by the Policy.

15.     The insured may not have notified Underwriters of an "occurrence" or an offense which may result in a claim as soon as practicable, as required by the Policy.

16.     The products-completed operations hazard may not apply to the claim.

17.     The Policy contains an exclusion for prior completed work.

18.     The Policy contains an exclusion for property damage to impaired property or property not physically injured.

19.     The Policy contains an exclusion for recall of products, work, or impaired property.

20.     The Policy contains an exclusion for construction management errors and omissions.

21.     The Policy contains an exclusion for contractors - professional liability.

22.     The Policy contains an exclusion for contractual liability.

23.     The Policy contains an exclusion for oral contracts.

24.     The Policy contains an exclusion for expected or intended injury.

25.     The Policy contains an exclusion for damage to real property.

26.     The Policy contains an exclusion for damage to the insured's product.

27.     The Policy contains an exclusion for damage to the insured's work.

28.     The Policy contains an exclusion for independent contractors.

29.     The Policy contains an exclusion for earth movement.

30.     The Policy contains an exclusion for mold.

31.     The Policy contains an exclusion for punitive or exemplary damages.

32.     There may have been misrepresentations made by the insured during the application process which increased Underwriters' risk of loss.

33.     There may be other insurance that applies to the claim so that the other insurance provisions of the Policy would apply.

34.     Any and all other reasons contained in the terms of the Policy, the laws of the State of Tennessee, or otherwise.

34.     In the event that it is determined through the discovery process in this case that any of the foregoing factors in paragraph 33 exist, Underwriters respectfully request that this Court declare that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit based on any such factors and also declare that Underwriters have no duty to defend the Cress Defendants against these claims based on any such factors.

35.     In addition, Underwriters respectfully request that this Court declare that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit and also declare that Underwriters have no duty to defend the Cress Defendants against these claims for any and all other reasons contained in the Policy, the application for the Policy, or the laws of the State of Tennessee.

WHEREFORE, PREMISES CONSIDERED, Certain Underwriters at Lloyd's, London, pray that this Court enter a declaratory judgment that there is no coverage under the Policy for the claims asserted by the Browns against the Cress Defendants in the Lawsuit, that Underwriters have no duty to indemnify the Cress Defendants for these claims, that Underwriters have no duty to defend the Cress Defendants against these claims, and for such other relief to which it may show itself justly entitled.

Respectfully submitted,

BRATTON, O'NEAL & THORP, P.C.

By_ /s/ Gregory W. O'Neal_____
    Gregory W. O'Neal - #15860
    Attorney for Plaintiff
    675 Oakleaf Office Lane, Suite 200
    Memphis, Tennessee   38117-4863
    (901) 684-6100
    (901) 684-6106 - Fax
    E-mail: gregoneal@brattononeal.com

F:\Data\Lloyd's\Cress\Complaint for Declaratory Judgment\Complaint for Declaratory Judgment.doc